COMMONWEALTH of Pennsylvania,
Appellee,

v.

Sean ROCHE, Appellant.

Superior Court of Pennsylvania.

Submitted April 17, 2001.

Filed Aug. 27, 2001.

Reargument Denied Oct. 31, 2001.

Karl Baker, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: McEWEN, President Judge Emeritus, JOYCE, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

¶ 1 Appellant, Sean Roche, appeals from his judgment of sentence of eleven and one-half (11–1/2) months to twenty three (23) months for his conviction of the offenses of aggravated assault, simple assault and reckless endangerment of another person.[1] After review, we vacate Appellant's aggravated assault conviction and remand for resentencing on only his simple assault and reckless endangerment convictions.

¶ 2 The underlying facts, which formed the basis of Appellant's conviction, as aptly set forth in the opinion of the Honorable Sandy Bryd, and supported by the certified record, are as follows:

Christian Frenz, the complainant, and his friend Daniel Judge entered Brownie's, a bar located at Second and Market Street in Philadelphia, Pennsylvania on August 7, 1999, between 9:00 and 10:00 p.m. The men remained in the bar drinking alcoholic beverages until they got up to leave approximately 2:00 a.m. on August 8, 1999.

As Mr. Frenz and Mr. Judge were about to leave the bar [Appellant] asked Mr. Frenz if he wanted to arm wrestle. [Appellant] was twice as large and appeared much stronger than Mr. Frenz. Mr. Frenz declined the offer and headed toward the exit, whereupon [Appellant] shoved Mr. Frenz. Mr. Frenz was about to say something in response but Mr. Judge advised him against it. Immediately after the shoving incident Mr. Frenz and Mr. Judge left Brownie's and walked along the alleyway toward their car. After they were about three hundred feet away from the bar, Mr. Judge turned around and saw [Appellant] and another male exit Brownie's and proceed to follow them down the alleyway. [Appellant] caught up to the men and asked the complainant "Are you a tough guy?" When Mr. Frenz turned around [Appellant], without provocation, delivered a closed fist blow to the victim's left eye. Mr. Frenz fell to the ground unconscious[.] [When Mr. Frenz's head struck the concrete he sustained a scalp laceration which began to bleed profusely. N.T. Trial, 2/7/2000 at 39, 58.] . . . Fortunately, a police car drove by at that moment and Mr. Roche and his companion turned and ran away.

Mr. Frenz tried to get up, lost his balance and fell back down. An ambulance subsequently arrived and he was transported to Thomas Jefferson University Hospital. Doctors determined that he suffered an orbital blowout, frontal rim and sinus fractures. During his five day hospitalization, surgery was performed to attach a plate on the bottom eyelid. Mr. Frenz also received eight staples to close the wound to the back of his head. At the time of trial, some six (6) months later, Mr. Frenz still suffered from straight upward double vision gaze. (N.T., 2/7/00, 55–58).

Trial Court Opinion, filed 11/29/2000, at 2.

¶ 3 Appellant was arrested and proceeded to a bench trial before Judge Byrd, who found him guilty of the aforementioned offenses. On the aggravated assault conviction, Judge Byrd sentenced Appellant to a term of eleven and one-half (11–1/2) to twenty-three (23) months' incarceration followed by thirteen (13) years of reporting probation. On the simple assault conviction, Judge Byrd imposed a concurrent term of imprisonment of eleven and one-half (11–1/2) to twenty-three (23) months.

1. 18 Pa.C.S.A. §§ 2701, 2702 and 2705.

On the reckless endangerment conviction, Judge Byrd imposed a term of five (5) years probation to run concurrently with the sentence for aggravated assault. Judge Byrd also ordered Appellant to pay $41,188.54 in restitution to the victim for unreimbursed medical expenses.

¶ 4 On appeal to our Court, Appellant presents one issue for our consideration:

WAS NOT THE EVIDENCE INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE CONVICTION FOR AGGRAVATED ASSAULT, GRADED AS A FELONY OF THE FIRST DEGREE, INASMUCH AS APPELLANT DID NOT ACT WITH THE INTENT TO CAUSE SERIOUS BODILY INJURY NOR UNDER CIRCUMSTANCES MANIFESTING AN EXTREME INDIFFERENCE TO THE VALUE OF HUMAN LIFE WHEN HE PUNCHED THE COMPLAINANT ONCE IN THE EYE?

Appellant's Brief at 3.

■ ¶ 5 Appellant argues that the evidence was insufficient to sustain his conviction for aggravated assault. While the Appellant concedes that the victim suffered a serious bodily injury, he contends that this alone is not enough to justify his conviction. He reasons that the statute requires that the Commonwealth show that, when Appellant acted, he did so with the intent to cause serious bodily injury or that his conduct exhibited a reckless disregard for the possibility that it would cause the victim serious bodily injury. Therefore, Appellant argues that his single weaponless punch to the victim's head did not demonstrate the requisite intent on his part to cause the victim serious bodily injury nor did the single punch evidence a heightened degree of recklessness on his

part. After careful consideration, we must agree.

In reviewing a sufficiency of the evidence claim, the test we apply is whether the evidence, and all reasonable inferences taken from the evidence, viewed in the light most favorable to the Commonwealth as verdict-winner, were sufficient to establish all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Lawson,* 759 A.2d 1, 5 (Pa.Super.2000), *appeal denied,* 565 Pa. 640, 771 A.2d 1281 (2001); *Commonwealth v. Williams,* 554 Pa. 1, 9, 720 A.2d 679, 683 (1998).

¶ 6 The relevant section of the Crimes Code under which Appellant was convicted is Section 2702(a)(1) which provides:

**2702. Aggravated Assault**

(a) OFFENSE DEFINED.—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

18 Pa.C.S.A. § 2702(a)(1).[2] Serious bodily injury is further defined by the Crimes Code as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S.A. § 2301.

¶ 7 In its opinion the Trial Court indicated that it found Appellant guilty of aggravated assault since "[t]estimony describing the events leading up to the attack, i.e. the challenge to arm-wrestle, the shoving incident, following the victim out of the bar and calling out 'Are you a tough guy?' support the conclusion that Mr. Roche at-

---

**2.** Aggravated assault under this statutory section is graded as a felony of the first degree punishable by a maximum term of incarceration of twenty years.

tacked Mr. Frenz without provocation and after sufficient deliberation to form the intent to inflict serious bodily injury." Trial Court Opinion, filed 11/29/2000, at 4. Because the Trial Court specifically found that Appellant intended to cause serious bodily injury via his actions, we are required, in evaluating Appellant's claim, to first ascertain whether the Commonwealth has "presented sufficient evidence to show that the defendant intentionally caused, or attempted to cause, serious bodily injury manifesting extreme indifference to the value of human life." *Commonwealth v. Caterino,* 451 Pa.Super. 42, 678 A.2d 389, 391 (1996), *appeal denied,* 546 Pa. 652, 684 A.2d 555 (1996). "A person acts intentionally with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1); *Commonwealth v. Sanders,* 426 Pa.Super. 362, 627 A.2d 183, 186 (1993).

 ¶ 8 As our Court has previously stated:

As intent is a subjective frame of mind, it is of necessity difficult of direct proof[.][W]e must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

*Commonwealth v. Little,* 418 Pa.Super. 558, 614 A.2d 1146, 1154 (1992), *appeal denied,* 533 Pa. 608, 618 A.2d 399 (1992).

¶ 9 Appellant relies principally on *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978) as support for his contention that his act of throwing one punch did not demonstrate the requisite intent to justify his conviction for aggravated as-

sault. In *Alexander,* the victim was standing on a street corner when the defendant walked up to him and punched him once in the face breaking his nose. On appeal, the Commonwealth did not contend that the victim actually suffered serious bodily injury from this blow; rather, the Commonwealth contended that the appellant's act of striking the victim in the face once with a closed fist was enough to demonstrate the specific intent on his part to cause serious bodily injury. The Supreme Court rejected this argument and said:

While there can be no dispute about the physiological significance of the head, where the victim did not actually sustain the requisite serious bodily injury, we cannot say that the mere fact that a punch was delivered to that portion of the body (the head) is sufficient, without more, to support a finding that appellant intended to inflict serious bodily injury. Where the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury. Criminal intent may be proved by direct or circumstantial evidence. In the instant case, the only direct evidence of appellant's intent is his testimony to the effect that he did not intend to seriously injure the victim. Thus, any evidence of his intent to inflict serious bodily injury must be gleaned from the other circumstances surrounding appellant's attack on the victim. In this case, there simply are no such circumstances to support a finding that appellant harbored the requisite intent. There is no evidence that appellant was disproportionately larger or stronger than the victim; appellant was not restrained from escalating his attack upon the victim; appellant had no weapon or

other implement to aid his attack; appellant made no statements before, during, or after the attack which might indicate his intent to inflict further injury upon the victim. Appellant delivered one punch and walked away. See *Commonwealth v. Alexander, supra,* 237 Pa.Super. at 118–20, 346 A.2d at 322–23 (Spaeth, J., dissenting).

To accept the Commonwealth's argument in this case would be to allow an admitted simple assault to be bootstrapped up to an aggravated assault. We hasten to add that a simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault. All we hold is that the evidence in the instant case is insufficient to support such a finding.

*Id.* at 194, 383 A.2d at 889 (citations omitted).

¶ 10 The Commonwealth chiefly distinguishes *Alexander* on the basis that the victim in *Alexander* did not suffer serious bodily injury, whereas, in the case at bar, the victim did in fact suffer serious bodily injury. While it is indisputable that the victim in this case suffered serious bodily injury from the single blow delivered by Appellant, the attendant facts and circumstances do not suggest that Appellant delivered that lone blow with the specific intent of inflicting serious bodily injury upon the victim. Simply showing that the victim sustained a serious bodily injury is not enough to sustain a conviction for aggravated assault. The aggravated assault statute is not a strict liability statute. To sustain a conviction the Commonwealth must also prove that the Appellant acted with the requisite *mens rea* or criminal state of mind.

¶ 11 The Commonwealth argues that Appellant's intent can be inferred from the circumstances of his conduct in initiating the fight and then pursuing the victim. The Commonwealth notes the Appellant was approximately twice the size of his victim. In addition, the Commonwealth contends the Appellant's belligerent words and actions indicate that the attack would have continued if a police car did not pull up to the scene. However, based solely on these facts alone, we do not believe that an inference of Appellant's intent to cause death or serious bodily injury can be drawn. Appellant's belligerent words and the throwing of one punch are in and of themselves insufficient factors to support the conclusion that Appellant had the requisite intent to cause serious bodily injury when he struck the victim.

¶ 12 During the initial encounter in the bar, Appellant did not threaten the victim with harm or injury but merely challenged him to arm wrestle and briefly pushed the victim when the victim declined his offer. When the victim exited the bar and Appellant followed, Appellant again did not specifically threaten the victim with injury or insinuate that he would cause physical harm to the victim, aside from Appellant's childish inquiry as to whether the victim thought he was a "tough guy." After Appellant delivered his lone, ill-advised punch with his hand, he ceased his attack immediately and did not engage in further physical contact with the victim. Though the victim was defenseless, Appellant did not continue to strike the victim while the victim was lying motionless on the ground nor did Appellant pursue or extend his attack to the victim's companion.[3] Appel-

---

**3.** While it is true, as the Commonwealth asserts, that the police arrived on the scene

shortly after Appellant struck the victim, the record nevertheless demonstrates that Appel-

lant offered no indication that he intended to inflict further harm. Moreover, and importantly, Appellant did not possess or use a weapon or other instrumentality of harm at any time before or during this attack. In short, Appellant merely delivered one punch to the victim's face with his hand and walked away. While Appellant's actions certainly demonstrated the sufficient requisite intent to sustain his conviction for simple assault, in that they showed that he acted with the intent to cause Appellant bodily injury,[4] they were not so egregious or sustained to suggest that he legally possessed the specific intent to inflict *serious* bodily harm when he punched Appellant once.

■ ¶ 13 We recognize that, when, as here, the victim sustains serious bodily injury, the absence of a demonstration of specific intent is not, in and of itself, wholly fatal to the Commonwealth's case. The Commonwealth may also meet its burden of proof by showing that a defendant acted recklessly under circumstances manifesting an extreme indifference to the value of human life. *Commonwealth v. Nichols*, 692 A.2d 181, 185 (Pa.Super.1997); *Commonwealth v. Magnelli*, 348 Pa.Super. 345, 502 A.2d 241, 243 (1985). Nevertheless, the above referenced factual circumstances of this case do not establish that Appellant acted with such a degree of recklessness which would justify his conviction for aggravated assault.

¶ 14 In *Commonwealth v. O'Hanlon*, 539 Pa. 478, 653 A.2d 616 (1995) our Supreme Court had occasion to discuss the nature of the criminal conduct which much be exhibited by a defendant which would constitute recklessness for the purposes of our aggravated assault statute. The appellant in that case, driving while inebriated, ran a red light and struck another vehicle, seriously injuring both the driver and himself. He was convicted of aggravated assault and reckless endangerment. On appeal, appellant argued that the evidence was insufficient to support the verdict as the requisite *mens rea* of recklessness was not established.

¶ 15 Our Supreme Court agreed and stated:

[M]ere recklessness is insufficient to support a conviction for aggravated assault, which requires a higher degree of culpability, i.e., that which considers and then disregards the threat necessarily posed to human life by the offending conduct. There must be an element of deliberation or conscious disregard of danger not present to the same extent in, e.g., either reckless endangerment, to which appellant admits, or driving while intoxicated. Aggravated assault is a second degree felony, reckless endangerment and driving under the influence of alcohol are second degree misdemeanors. The difference in grading reflects the relative seriousness of the crimes, and the differing levels of criminal intent involved. The quantum of recklessness

___

lant had the clear opportunity to continue the attack prior to the appearance of the police. Indeed, after Appellant had struck the victim, the victim's friend stated that he cursed the Appellant, and Appellant responded by asking him what he was going to do. N.T. Trial 2/7/2000 at 36. Appellant subsequently called the victim's friend a "little piece of crap" but Appellant did not move from his prior position. *Id.* Appellant then noticed a police car coming down the street and left the scene. Thus, there existed a clear temporal break

between the time of the initial punch and the arrival of the police car on the street, during which Appellant could have continued the attack on the victim had he elected to do so.

4. *See e.g. Commonwealth v. Torres*, 564 Pa. 219, 223, 766 A.2d 342, 344 (2001) ("A person commits simple assault if he attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another.") (citing 18 Pa.C.S.A. § 2701(a)(1)).

required to prove the misdemeanors will not serve to support the felony.

\* \* \* \* \*

[F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue. The recklessness must, therefore, be such that life threatening injury is essentially certain to occur. This state of mind is, accordingly, equivalent to that which seeks to cause injury. Examples of such behavior make the distinction clear. In *Commonwealth v. Daniels*, 467 Pa. 35, 354 A.2d 538 (1976), appellant had fired a gun into a crowd; in *Commonwealth v. Laing*, 310 Pa.Super. 105, 456 A.2d 204 (1983), appellant drove his car into a crowd, after having aimed it at an individual; in [*Commonwealth v.*] *Scofield [*360 Pa.Super. 552, 521 A.2d 40 (1987)] the appellant drove at a pedestrian. See also, *Commonwealth v. Hlatky*, 426 Pa.Super. 66, 626 A.2d 575 (1993); *Commonwealth v. Rohach*, 344 Pa.Super. 229, 496 A.2d 768 (1985). In each of these instances, the defendant could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of his actions. In each case, the consequence was ignored.

\* \* \* \* \*

*Aggravated assault is, indeed, the functional equivalent of a murder in which, for some reason, death fails to occur.*

*Id.* at 482–483, 653 A.2d at 618 (emphasis supplied); *Accord Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (1998); *Commonwealth v. Dellavecchia*, 725 A.2d 186, 188 (Pa.Super.1998).

¶ 16 Appellant's act of throwing one punch after using belligerent words was clearly insufficient to establish that he acted with such a heightened degree of recklessness that he was virtually assured that death or serous injury would occur from his act. Appellant was not, nor could he be, virtually or even reasonably certain that death or serious injury would be the likely and logical result of his lone punch. This was not the functional equivalent of a murder in which for whatever reason death failed to occur.[5]

¶ 17 This was instead an all too common situation in which an individual, no doubt overcome by visions of his pugilistic prowess induced by consumption of alcohol, struck another individual with his fist outside of a bar. The law justifiably sanctions such reprehensible behavior as that which Appellant demonstrated through the offenses of simple assault and reckless en-

---

**5.** A good contrasting case which does highlight the level of recklessness necessary to sustain a conviction for aggravated assault is the case of *Commonwealth v. Davis*, 267 Pa.Super. 370, 406 A.2d 1087 (1979). In *Davis* the defendant punched his girlfriend once in the face, causing her to bleed profusely, and then proceeded to chase her out of the house. The defendant dove through the air and landed on an automobile smashing its windshield and breaking the radio antenna. When the girlfriend sought refuge in a car, the defendant jumped on the hood of car and broke its window with his fist. The girlfriend next sought shelter in a bus, but was denied admission to the bus by the driver, whereupon the defendant caught up to his hapless

victim and again began to beat her. The girlfriend broke free and hid in yet another car. In response to a question from the driver of this car, the defendant struck the driver in the face knocking her unconscious and breaking her jaw. We examined the defendant's overall conduct, which included his frenzied pursuit of his girlfriend, and concluded that the entirety of defendant's behavior during this episode showed that he acted with extreme disregard of the value of human life, and, hence, with the heightened degree of recklessness contemplated by the aggravated assault statute. No such frenzied and sustained manic pursuit was undertaken by Appellant in this case as his actions were limited to the throwing of a single punch.

dangerment, offenses for which Appellant was rightfully convicted. Appellant correctly does not challenge his convictions for those offenses as the evidence amply supports his conviction for them. Appellant is not, however, a failed murderer, and his conviction for aggravated assault therefore cannot stand.

¶ 18 In conclusion, we must vacate Appellant's aggravated assault conviction; however, because we may have disturbed the Trial Judge's overall sentencing arrangement, we remand for Appellant's resentencing on the convictions of simple assault and reckless endangerment alone. *See Commonwealth v. Goldhammer*, 512 Pa. 587, 517 A.2d 1280 (1986) (where appellate court vacates one of multiple convictions and thereby alters the sentencing scheme of the trial court, it is within the appellate court's authority to remand the matter for resentencing); *Commonwealth v. Fisher*, 452 Pa.Super. 564, 682 A.2d 811, 819 (1996), *appeal denied*, 546 Pa. 691, 687 A.2d 376 (1996) (same).

¶ 19 Judgment of sentence on the aggravated assault conviction is vacated, and Appellant is discharged as to that offense. In all other respects judgment of sentence is affirmed and case remanded for resentencing.

¶ 20 Jurisdiction relinquished.

¶ 21 JOYCE, J. files a Dissenting Opinion.

JOYCE, J., Dissenting.

¶ 1 I respectfully dissent from my esteemed colleagues' conclusion that the evidence in this case was insufficient to support Appellant's conviction for aggravated assault. As the Majority properly notes, it is indisputable that the victim in this case suffered serious bodily injury, specifically, an orbital blowout and frontal rim and sinus fractures. Thus, the determination is solely whether Appellant had the requisite intent to inflict serious bodily injury.

¶ 2 In *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978), upon which the Majority relies, our Supreme Court found that a single punch to the victim's head *without more* was insufficient to establish intent to inflict serious bodily injury. However, the holding was also premised on the fact that the victim did not sustain serious bodily injury, a fact that was conceded to by the Commonwealth. Furthermore, the Court noted that intent may be established by the circumstances surrounding the assault, and that no such circumstances existed in that case.[6] I find Alexander to be distinguishable for two reasons: first, unlike *Alexander*, we are presented with a situation where the victim indisputably suffered serious bodily injury. Second, and more importantly, it is my opinion that the circumstances surrounding the attack are sufficient to establish Appellant's intent. *See also Commonwealth v. Caterino*, 451 Pa.Super. 42, 678 A.2d 389, *appeal denied*, 546 Pa. 652, 684 A.2d 555 (1996)(for purposes of establishing the offense of aggravated assault, intent to cause serious bodily harm may be shown by the circumstances surrounding the incident); *Commonwealth v. Cassidy*, 447 Pa.Super. 192, 668 A.2d 1143 (1995), *appeal denied*, 545 Pa. 660, 681 A.2d 176 (1996) (intent to cause serious bodily injury can be inferred from circumstantial evidence).

---

**6.** The Supreme Court provided examples of circumstances that might support the finding of the requisite intent, noting that they were not present in that case. Examples included instances in which "appellant was not disproportionately larger or stronger than the victim; appellant was not restrained from escalating his attack upon the victim; appellant had no weapon or other implement to aid his attack; appellant made no statements before, during or after the attack which might indicate his intent to inflict further injury upon the victim." *Alexander, supra,* 383 A.2d at 889.

¶ 3 My review of the record reveals that as the victim and his friend were leaving the bar, Appellant, who was twice the size of the victim, asked him if he wanted to arm wrestle. The victim stated that he did not and proceeded towards the exit of the bar where Appellant pushed him. The victim did not retaliate but simply left the bar only to realize that Appellant and his companion were pursuing him. Appellant overtook the victim from behind in an alley and tauntingly asked him whether "he thought he was a tough guy." When the victim turned around, Appellant delivered a closed fist punch to the victim's eye, a vulnerable organ. This punch was so powerful it caused the victim to lose consciousness, fall backwards, and crack his head open when he hit the cement. When cursed at by the victim's friend, Appellant then turned his aggressiveness to that individual and challenged him as to what he was going to do about it. Appellant's conduct was only thwarted by the fortuitous arrival of the police. Appellant demonstrated his consciousness of guilt by fleeing upon observing the approaching police vehicle.

¶ 4 These facts indicate that the victim did nothing to instigate this attack. Rather, the victim tried to avoid this confrontation by first backing down from Appellant's challenge to arm wrestle, then walking away from Appellant when he was shoved in the bar and then again by continuing to walk away as Appellant pursued him down the sidewalk. Clearly, Appellant had one item on his agenda: to engage in a physical altercation with a stranger who was half his size and who did nothing to warrant the attack. His provoking actions, to which the victim did ·not succumb, escalated to the point where he struck the victim in the vulnerable organ of the eye with such force that he caused an orbital blowout and bone fractures to such an extent that the victim had to be hospitalized for five days, undergo surgery and still suffered from straight upward double vision gaze six months later. It is difficult to imagine a situation where Appellant's attempt to inflict serious bodily injury is more apparent. Furthermore, even if it could be argued that Appellant did not intentionally cause the serious bodily injury, the factfinder could have easily determined that Appellant acted recklessly. *See Commonwealth v. Hlatky*, 426 Pa.Super. 66, 626 A.2d 575, (1993), *appeal denied*, 537 Pa. 663, 644 A.2d 1200 (1994).

¶ 5 That Appellant acted with the requisite intent to sustain his conviction is also supported by *Commonwealth v. Davis*, 267 Pa.Super. 370, 406 A.2d 1087 (1979). In that case, Mr. Davis was engaged in the assault of his girlfriend. During the altercation, Mrs. Amos, the victim, attempted to provide safety to the appellant's girlfriend by sheltering her in her vehicle. As a result of her assistance, "in one motion, appellant swiveled and punched Mrs. Amos in the face causing her to black out. . . . Mrs. Amos suffered multiple fractures to her lower jaw which forced her to spend four days in the hospital and six weeks with her jaw wired shut." *Id.* at 1088. In finding the evidence sufficient to sustain the appellant's conviction, this Court distinguished *Alexander* on the basis that there was no serious bodily injury in *Alexander* and that the Commonwealth instead argued that a jury could infer extreme indifference to the value of human life simply by the fact that the punch was to the victim's face. *Id.* at 1089. Our Court further relied on the appellant's overall conduct as evidence of his intent. *Id.* See also, *Commonwealth v. Cassidy*, 447 Pa.Super. 192, 668 A.2d 1143 (1995), (evidence was sufficient for aggravated assault conviction where defendant was larger and stronger than victim, and that in course of argument defendant threw victim into wall causing loss of consciousness,

hospitalization for two days, and victim had to wear body brace and wrist cast for two months).

¶ 6 In conclusion, I would find that Appellant acted intentionally when he caused serious bodily injury to the victim and that the evidence was sufficient to sustain his conviction for aggravated assault. My conclusion is based on Appellant's manifestation of his intent when he initiated the encounter with the victim, a man half of his physical size, asked him to arm wrestle, shoved him, pursued him outside the bar, and then engaged in an unprovoked attack in a belligerent and aggressive manner. Thus, I would affirm the judgement of sentence.