## Commonwealth v. Lyons

34

C.P. of Lawrence County, no. 1212 of 2009.

*Kathleen Fee-Baird, assistant district attorney,* for Commonwealth.
*David H. Acker,* for defendant.

COX, *J.,* June 9, 2010—Before the court for disposition is the omnibus pretrial motion containing two motions for writ of habeas corpus filed on behalf of the defendant Harry W. Lyons, which argue the Commonwealth failed to establish a prima facie case that the defendant committed the crimes of aggravated assault, simple assault, harassment, recklessly endangering another person and endangering welfare of children. The defendant contends that the victim in this case, JS, was incompetent to testify because he is a 4-year-old child who suffered brain damage during birth and his answers were inconsistent at the preliminary hearing. Therefore, the defendant argues, the testimony of Thomas S, his father, regarding JS's statements is inadmissible hearsay and is not subject to the tender years exception.[1]

---

1. 42 Pa.C.S. §5985.1.

On June 26, 2009, Sandy Copper and Christine Montague, caseworkers at Lawrence County Children and Youth Services, received a Childline referral regarding an incident involving child abuse at 3225 Old Pittsburgh Road, New Castle, Lawrence County, Pennsylvania. The defendant lived at that residence with his girlfriend, Jennifer DeSalvo, and her two children: the victim JS and his brother. Ms. DeSalvo had custody of the two children at the time of this incident. Ms. Copper noticed bruising on JS's face from the areas surrounding his eye to his jaw and there was bruising on his buttocks. The caseworkers departed the residence and obtained an emergency court order for custody of the two children. However, the children were not taken away immediately because Ms. DeSalvo indicated to the caseworkers that JS had an appointment for an examination by a local pediatrician, Dr. Gheorge Antonescu. Ms. Copper insisted upon the caseworkers taking the children to Dr. Antonescu's office to avoid involving police in potentially transferring the children to Mr. S' custody.

Next, Ms. Copper went to the residence of Thomas S., the children's father, to determine if it was a suitable home for the children to be placed. Mr. S was at work on the morning of June 26, 2009. At approximately 11:30 o'clock a.m., Lisa, Mr. S' fiancee at the time and current wife, called Mr. S on the telephone and stated that she was informed Mr. S' four-year-old son JS had a large bruise on the left side of his face and bruising on his buttocks. Mr. S was scheduled to leave work at 12 o'clock p.m. and he went directly home. When he arrived, he was met by his wife and the caseworkers. Mr. S and the caseworkers immediately went to the Lawrence County Government Center to obtain a court order placing the

children in Mr. S' custody, which was granted. It is unclear from the record what procedure Mr. S utilized to gain custody of the children. While at the Lawrence County Government Center, Mr. S called his sister, Sherry Fenske, and requested that she pick up JS and JS's brother at Dr. Antonescu's office.

After the children were taken to Mr. S' residence, JS was playing with his father in their front yard and eventually they went into the residence. While in the living room of the residence, JS informed Mr. S that the defendant punched him and he made a punching gesture toward the left side of his face. He also pointed toward his buttocks and said that "mommy beat me". JS was taken to Children's Hospital of Pittsburgh where he was examined by Dr. Kavita Conti, who was in her fellowship for pediatric emergency medicine and worked at that hospital for two-and-a-half years. Dr. Conti graduated from medical school in 2004 and is a board certified pediatrician. Initially, the doctor explained that JS suffered from asphyxia at birth and, as a result, had anoxic brain damage and encephalopathy, liver damage and hyperbilirubinemia. Dr. Conti indicated that, during the examination, JS was mildly distressed and was quiet. She noted maxilla erythema, bruises, swelling and tenderness of the left cheek. The bruise was described as bluish in color and extended from JS's orbit and maxillary down to his chin. He also had bruising of his buttocks, which seemed to be more severe on the right side than the left. A CT scan revealed that there were no fractures or structural damage to JS's face. Dr. Conti opined that the bruising of the face and buttocks were caused by another person and were not self-inflicted or from falling down.

On July 7, 2009, Officer Caleb Duff of the Shenango Township Police Department received a facsimile from Lawrence County Children and Youth Services referring to a child abuse case involving a 4-year-old victim. The report stated that the defendant and Jennifer DeSalvo injured the child. Ms. DeSalvo provided multiple inconsistent explanations for the injuries to Ms. Copper. Eventually, the defendant was charged with aggravated assault,[2] simple assault,[3] harassment,[4] recklessly endangering another person[5] and endangering welfare of children.[6] A preliminary hearing was held on November 16, 2009, and Magisterial District Judge Jennifer L. Nicholson bound all of the charges over to this court.

JS testified at the defendant's preliminary hearing, but appeared to be confused at times. During his testimony, JS called the defendant "daddy", but when asked to describe his "daddy", he accurately described Mr. S. JS also said he got hit in the face at his "daddy's" house and later changed his answer to "mommy's" house. There were many inconsistencies in JS's testimony, which included stating that the white board in the courtroom was red, he indicated that his brown shoes were green and his white pants were red. But, JS remembered getting punched in the face by the defendant. JS clearly indicated that the defendant was the person who punched him in the face. It must be noted that Magisterial District Judge Jennifer L. Nicholson properly ruled that JS's

2. 18 Pa.C.S. §2702(a)(1).
3. 18 Pa.C.S. §2701(a)(1).
4. 18 Pa.C.S. §2709(a)(1).
5. 18 Pa.C.S. §2705.
6. 18 Pa.C.S. §4304(a)(1).

testimony was incompetent and inadmissible. This court agrees with Magisterial District Judge Nicholson's determination and JS's testimony is also incompetent for the purposes of disposition on this matter based upon the preliminary hearing transcript.

The defendant has filed an omnibus pretrial motion challenging the sufficiency of the Commonwealth's evidence. A petition for writ of habeas corpus is the proper means for testing a pretrial finding that the Commonwealth has sufficient evidence to establish a prima facie case. *Commonwealth v. Karlson,* 449 Pa. Super. 378, 674 A.2d 249 (1996). The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime. *Commonwealth v. Fox,* 422 Pa. Super. 224, 234, 619 A.2d 327, 332 (1993) (quoting *Commonwealth v. Tyler,* 402 Pa. Super. 429, 433, 587 A.2d 326, 328 (1991)).

In evaluating an accused's entitlement to pretrial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a prima facie case that the defendant committed the crime with which he or she is charged. *Commonwealth v. Hock,* 556 Pa. 409, 728 A.2d 943 (1999). In a pretrial habeas corpus proceeding, as in a preliminary hearing, the Commonwealth has the burden of establishing a prima facie case, offering some proof to establish each material element of the offense as charged. *Commonwealth v. Owen,* 397 Pa. Super. 507, 580 A.2d 412 (1990). This does not mean that the prosecution must prove the accused guilty beyond a reasonable doubt, but rather, the prosecution must establish "sufficient probable cause" that the accused has

committed the offense, *Commonwealth v. Prosdocimo,* 331 Pa. Super. 51, 479 A.2d 1073 (1994). The standard in determining whether a defendant is properly held for court is: (a) that the record reveals a prima facie showing that a crime or crimes have been committed; and (b) that the defendant was in some way legally responsible. *Liciaga v. Court of Common Pleas of Lehigh County,* 523 Pa. 258, 566 A.2d 246 (1989). In other words, a prima facie case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. *Commonwealth v. Fountain,* 811 A.2d 24 (Pa. Super. 2002).

The Commonwealth establishes a prima facie case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. *Commonwealth v. Marti,* 779 A.2d 1177 (Pa. Super. 2001). The Commonwealth need not prove the elements of the crime beyond a reasonable doubt. *Id.* at 1180. The prima facie case merely requires evidence of the existence of each element of the crime charged. *Id.* Additionally, the evidence is to be reviewed in a light most favorable to the Commonwealth and the Commonwealth is entitled to reasonable inferences drawn from the evidence. *Id.*

The weight and credibility of the evidence is not a factor at this stage, the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. *Id.* As a result of the Commonwealth bearing the minor burden of establishing a prima facie case, a witness' credibility is not an issue at a preliminary hearing. *Liciaga, supra.* Neither is it for

the court ruling on the motion for writ of habeas corpus to assess the credibility of the witnesses presented at the preliminary hearing. *Commonwealth v. Carmody,* 799 A.2d 143 (Pa. Super. 2002). Although a habeas corpus hearing is similar to a preliminary hearing, in a habeas corpus proceeding the Commonwealth has the opportunity to present additional evidence to establish that the defendant has committed the elements of the offense charged. *Karlson, supra.*

First, the defendant contends that the testimony of Thomas S regarding statements made by JS should not be admitted under the tender years exception to the hearsay rule because JS is incompetent to testify. As a result, the defendant asserts that testimony cannot become competent through the tender years exception.

That exception is set forth in 42 Pa.C.S.§5985.1, which states:

"*(a) General rule.*—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

"(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

"(2) the child either:

"(i) testifies at the proceeding; or

"(ii) is unavailable as a witness."

It must be noted that generally every witness is presumed to be competent to be a witness. *Commonwealth v. Moore,* 980 A.2d 647, 649 (Pa. Super. 2009) (quoting *Commonwealth v. Judd,* 897 A.2d 1224, 1228 (Pa. Super. 2006)). The presumption of competence also applies to child witnesses. *Commonwealth v. Boich,* 982 A.2d 102, 109-10 n.6 (Pa. Super. 2009). However, the trial court must make an inquiry into the mental capacity of a child witness under the age of 14 to determine if he or she is competent to testify. *Id.* That investigation involves determining whether the following factors exist: "(1) capacity to observe or perceive the occurrence with a substantial degree of accuracy; (2) ability to remember the event which was observed or perceived; (3) ability to understand questions and to communicate intelligent answers about the occurrence, and (4) consciousness of the duty to speak the truth." *Id.* (citation omitted)

A child who is incompetent to testify is unavailable for purposes of the tender years exception. *Commonwealth v. Bean,* 450 Pa. Super. 574, 578, 677 A.2d 842, 843 (1996) (citing *Commonwealth v, Hanawalt,* 419 Pa. Super. 411, [414,] 615 A.2d 432, 433 (1992)). However, the trial court must make an evaluation regarding the tender years exception and include in its inquiry the effect of the child's incompetence on the reliability of the declarations of the child. *Id.* 450 Pa. Super. at 582, 677 A.2d at 845-46. In *Bean,* the appellant was accused of sexually assaulting his 11-year-old mildly retarded and epileptic son. The appellant and his ex-wife had one child, the victim, and they divorced eight years prior to

the alleged sexual assault. The victim wanted to spend more time with the appellant and the appellant was granted overnight visitation on weekends. On June 26, 1993, the victim returned to his mother's house after an overnight visit at the appellant's residence. The victim began riding his bike, but after a half an hour he complained that his "butt hurt." Initially, the victim indicated that the pain was from riding his bike; however, he later informed his mother that the appellant touched him inappropriately. Subsequently, the victim told his stepfather that the appellant "put his wiener in his butt." The victim was taken to the hospital for an examination and he asked a caseworker from the Department of Human Services "did you know that my dad put his wiener in my butt?" He also stated that, "Dad touched my wee-wee and I told him I didn't like it." The victim's family doctor also called another caseworker at Warren County Child and Youth Services to speak with the victim and the victim made a similar statement to the one he told his stepfather, but added "that his father put Neosporin on it to make it stop hurting, but that it didn't stop hurting."

A preliminary hearing was held to determine if the testimony from several witnesses who heard the victim's comments was admissible pursuant to the tender years exception to the hearsay rule. The trial court held an in camera hearing and the court deemed the victim incompetent to testify and was considered unavailable as a witness. The trial court determined that all of the statements to the witnesses demonstrated sufficient indicia of reliability, except the statements to the caseworker from Warren County Child and Youth Services. The appellant appealed claiming that the trial court improperly

decided that the statements contain sufficient indicia of reliability, even though the victim was an incompetent witness.

The *Bean* court explained that any statement admitted pursuant to the tender years exception must possess sufficient indicia of reliability, which can be garnered from the time, content and circumstances of its making. *Id.,* 450 Pa. Super. at 579, 677 A.2d at 844. "Property admitted evidence under this hearsay exception possesses 'particularized guarantees of trustworthiness' and, therefore, does not violate the accused's right to confront witnesses under the state or federal constitution." *Id.* In order to decide whether statements made by a child are trustworthy, the court must examine the following factors: "(1) the spontaneity and consistent repetition of the statement(s); (2) the mental state of the declarant; (3) the use of terminology unexpected of a child of a similar age; and (4) the lack of motive to fabricate." *Id.,* 450 Pa. Super. at 580, 677 A.2d at 844-45. The *Bean* court noted that the victim attempted to please adults by telling them what they wanted to hear and he believed that it was sometimes better to lie than to tell the truth. *Id.* Additionally, the court recognized that the trial court attempted to evaluate the reliability of the hearsay testimony, but failed to consider the effect of the victim's incompetence on the statements[7] made to the witnesses and his ten-

7. The *Bean* court explained that the United States Supreme Court held in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), a child's testimony is not per se unreliable based on the fact that the child is deemed incompetent to testify at trial. However, a child's incompetence is a relevant factor to determine whether the child's earlier statements possessed the requisite indicia of reliability. *Bean,* 450 Pa. Super. at 582 n.5, 677 A.2d at 845-46 n.5.

dency to tell adults what he believes they want to hear. *Id.,* 450 Pa. Super. at 582, 677 A.2d at 845-46. Therefore, the *Bean* court granted the appellant's request for a new trial, in order for the trial court to perform a more thorough evaluation under the tender years exception. *Id.*

In the case sub judice, JS was playing with his father in the living room of his father's residence when he indicated that the defendant punched him in the face. More specifically, JS made a fist and a punching motion toward the left side of his face and said that the defendant punched him. He also pointed toward his buttocks and stated that "mommy beat me." These statements were consistent with the examination performed by Dr. Conti, who stated that JS had bruising on the left side of his face and on his buttocks. She also opined that the injuries were caused by another person striking JS and were not self-inflicted.

Conversely, the defendant asserts that JS's testimony at the preliminary hearing was inconsistent to the extent that Magisterial District Judge Jennifer L. Nicholson declared that he was incompetent to testify; therefore, the hearsay statements are inadmissible. JS did not testify at the hearing regarding the current omnibus pretrial motion. The parties have stipulated to the admission of the preliminary hearing transcript and the court must utilize that testimony to determine if JS's testimony was incompetent and whether the tender years exception to the hearsay rule applies. As stated previously, the court rules that JS's testimony is incompetent based on the preliminary hearing transcript; thus, rendering him unavailable to testify in the current matter under the tender years exception. The defendant points out that JS testified

that the white board in the courtroom was red, his brown shoes were green and his white pants were red. Additionally, JS suffered brain damage at birth caused by asphyxiation. The defendant contends that all of these factors indicate a lack of sufficient indicia of reliability to the statements JS made to Mr. S and Mr. S' testimony regarding those statements is inadmissible.

As the *Bean* court explained, the court must take into account the surrounding circumstances and factors to determine if the statements were admissible under the tender years exception. While playing in Mr. S' living room, JS informed Mr. S that the defendant punched him in the face and that Ms. DeSalvo struck him on the buttocks. It must be noted that Mr. S did not question JS regarding the incident or attempt to solicit that information from him. Moreover, JS consistently repeated his statement that the defendant punched him in the face and that his mother struck him on the buttocks. The language used by JS indicates that his statements were reliable as he stated that the defendant punched him while making a fist and gesturing toward his bruised eye. He also indicated that Ms. DeSalvo struck him on the buttocks by exclaiming that "mommy beat me." That choice of terminology and gestures are commonly utilized by 4-year-old children with the same maturity level.

Even under questioning at the preliminary hearing, JS consistently stated that the defendant punched him. However, JS became confused at certain points in the proceeding and indicated that the defendant was his father and that the defendant punched him at Mr. S' residence, which he quickly corrected to his mother's residence. It is important for the court to consider JS's cognitive impairments caused at birth in this analysis as

well. JS's young age and brain damage may cause him to become confused easily and may affect his perception of certain events. But, that does not appear to be the situation in this case. JS consistently explained that the defendant was the individual that punched him in the face and he also made a punching gesture towards the left side of his face. Furthermore, JS has no reason to fabricate his statement regarding the injuries that he sustained as he spoke favorably about his mother at the preliminary hearing, and he recalled an occasion when his mother kissed his knee when it was injured. Likewise, there is no indication that he had an issue with the defendant or a reason to fabricate his statement. In addition, the testimony of Dr. Conti appears to corroborate JS's assertion that the defendant punched him as Dr. Conti opined that JS was struck by another person, which caused the bruising. Also, JS suffered bruising on his buttocks that was consistent with being struck by another person. Therefore, the court rules that, even though JS is incompetent to testify, the statements he made to Mr. S meet the requirements for the tender years exception to the hearsay rule and are admissible.

Next, the defendant contends that the Commonwealth has failed to establish a prima facie case that the defendant committed aggravated assault, simple assault, harassment, recklessly endangering another person and endangering welfare of children.

The defendant has been charged with aggravated assault in violation of 18 Pa.C.S. §2702(a)(1), which states:

"*(a) Offense defined.*—A person is guilty of aggravated assault if he:

"(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

Moreover, serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. §2301.

In the current matter, it appears that bruising to the face is insufficient to establish serious, permanent disfigurement or protracted loss or impairment of a bodily member or organ. Dr. Conti did not testify that JS suffered any serious bodily injury. Therefore, the Commonwealth bears the burden of establishing that the defendant attempted to cause JS serious bodily injury. *Commonwealth v. Matthew,* 589 Pa. 487, 492, 909 A.2d 1254, 1257 (2006) (citing *Commonwealth v. Alexander,* 477 Pa. 190, 193, 383 A.2d 887, 889 (1978)). The Commonwealth is not required to show that serious bodily injury actually occurred, but merely that the defendant attempted to cause serious bodily injury to the victim. *Commonwealth v. Stevenson,* 894 A.2d 759, 774 (Pa. Super. 2006) (citing *Commonwealth v. Galindes,* 786 A.2d 1004, 1012 (Pa. Super. 2001)). It must be noted that attempting to cause serious bodily injury and causing serious bodily injury are treated differently under 18 Pa.C.S. §2702. Attempting to cause serious bodily injury requires proof that the defendant intended to cause serious bodily injury. If the defendant is charged with causing serious bodily injury, the Commonwealth must establish that the defendant intentionally, knowingly or

recklessly caused the victim serious bodily injury. The Commonwealth is permitted to establish the specific intent to cause serious bodily injury through the circumstances surrounding the incident. *Commonwealth v. Galindes,* 786 A.2d 1004, 1012 (Pa. Super. 2001) (citing *Commonwealth v. Elrod,* 392 Pa. Super. 274, 279, 572 A.2d 1229, 1231 (1990)).

In *Alexander,* 477 Pa. 190, 383 A.2d 887, the victim was standing on a sidewalk and he was struck in the face by the appellant. The victim fell to the ground and was not rendered unconscious by the blow. He was eventually taken to the emergency room and treated for a nose injury. The appellant attempted to flee after striking the victim, but was apprehended by a taxi cab driver, who was an eyewitness, and a police officer. The appellant was convicted of aggravated assault at a bench trial. He filed post-trial motions that were denied and he was sentenced to a term of incarceration of nine months to 23 months. He appealed to the Pennsylvania Superior Court, which affirmed the trial court's decision. Subsequently, he filed an appeal with the Pennsylvania Supreme Court, which reversed the order of the Superior Court affirming the judgment of sentence.

The Commonwealth admitted that the appellant did not cause the victim serious bodily injury, but argued that striking the victim in the face demonstrated an intent to cause serious bodily injury. *Id.,* 477 Pa. at 193, 383 A.2d at 889. (See 18 Pa.C.S. §2702(a)(1).) The *Alexander* court explained that a punch delivered to the face, without more, cannot support a finding that the appellant intended to inflict serious bodily injury upon the victim. *Id.,* 477 Pa. at 194, 383 A.2d at 889. "Where the injury

actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury." *Id.* (citing *Commonwealth v. Caye,* 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Taylor,* 461 Pa. 557, 337 A.2d 545 (1975); *Commonwealth v. Fostar,* 455 Pa. 216, 317 A.2d 188 (1974)). The *Alexander* court reasoned that there were no circumstances to support a finding that the appellant garnered the requisite intent as there was not a major difference in size between the appellant and the victim, the appellant was not restrained from escalating his attack upon the victim, he did not have a weapon in his possession and he made no statements before, during or after the attack to indicate his intent to inflict further injury upon the victim. *Id.,* 477 Pa. at 194, 383 A.2d at 889. Thus, the court held that there was insufficient evidence to support a conviction for aggravated assault. *Id.,* 477 Pa. at 194-95, 383 A.2d at 889-90.

Also, in *Commonwealth v. Roche,* 783 A.2d 766 (Pa. Super. 2001), the appellant asked the victim if he wanted to arm wrestle and the victim declined to participate. As the victim and his friend were leaving the bar, the appellant, who was twice as large and appeared much stronger, shoved the victim. Immediately after that incident, the victim and his friend left the bar and walked toward their vehicle when they noticed that the appellant and another male exited the bar and began following them. The appellant and his companion approached the victim and asked him "Are you a tough guy?" When the victim turned around, the appellant punched him in the left eye and the victim fell to the ground unconscious.

He also struck his face on the concrete and sustained a scalp laceration. The victim was transported to the hospital and was subsequently diagnosed with an orbital blowout, frontal rim and sinus fractures. He underwent surgery to attach a plate on the bottom eyelid. The appellant was tried and convicted on the charges of aggravated assault, simple assault and reckless endangerment. He appealed the judgment of sentence to the Pennsylvania Superior Court challenging whether he acted with the intent to cause serious bodily injury.

The *Roche* court noted that the victim suffered serious bodily injury as a result of the punch. *Id.,* 783 A.2d at 770. However, "the attendant facts and circumstances do not suggest that appellant delivered that lone blow with the specific intent of inflicting serious bodily injury upon the victim." *Id.* It is not enough to merely establish that the victim suffered serious bodily injury; the Commonwealth must prove that the appellant acted with the requisite mens rea. *Id.* The *Roche* court ruled that the belligerent words of the appellant and the throwing of one punch are insufficient to support the conclusion that the appellant acted with the requisite intent to cause serious bodily injury. *Id.* The appellant threw one punch, immediately ceased his attack and did not continue to strike the victim while the victim was on the ground. *Id.* Clearly the appellant's action required a conviction for simple assault, but the Commonwealth failed to demonstrate that the appellant had the requisite intent to cause serious bodily injury to sustain a conviction for aggravated assault. *Id.* 783 A.2d at 771.

In the case sub judice, the evidence presented by the Commonwealth established that the defendant struck JS

on the left side of his face with a single punch similar to *Alexander* and *Roche*. Although there is a major size difference between the defendant and JS, there is no evidence to establish that the defendant intended to cause serious bodily injury to JS. Dr. Conti testified that JS had bruising on his left cheek, but there was no swelling or deformity in that area. Furthermore, Dr. Conti ordered a CT scan, which revealed that JS did not suffer any fractures on the left side of his face. Under the facts on record, the defendant struck a single punch to the left side of JS's face, but did not follow up his attack. It must be noted that JS had bruising on his buttocks as well, but the record states that his mother, Ms. DeSalvo, caused those injuries. The Commonwealth has not introduced any evidence to show the defendant had the intent to cause death or serious bodily injury. Thus, the court dismisses the charge of aggravated assault as the Commonwealth has failed to establish that the defendant intended to cause JS serious bodily injury.

Also, the defendant contends that the Commonwealth has failed to provide sufficient evidence to support the charge of recklessly endangering another person, which occurs if the defendant "engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. §2705. The court in *Commonwealth v. Moody*, 295 Pa. Super. 106, 441 A.2d 371 (1982), held that the Commonwealth failed to meet its burden that the defendant placed another in danger of death or serious bodily injury where the defendant forced a 12-year-old girl into a basement, struck her when she attempted to leave the basement and touched her in a vulgar manner.

In *Moody, supra,* the defendant accosted a 12-year-old girl while she was walking on the street in front of her home. The defendant forced the girl into the basement of a building and he molested her. During the encounter, the girl kicked the defendant in the groin and the defendant attempted to flee the building. As he was leaving, the victim attempted to exit the basement and the defendant struck her in order to keep her in the basement. The girl eventually exited the building and informed others of her situation. The defendant was apprehended after he attempted to drive away and he struck another vehicle. The defendant was convicted after a non-jury trial of attempted rape, indecent assault, simple assault, recklessly endangering another person and unlawful restraint. He subsequently appealed that decision arguing that the Commonwealth failed to provide sufficient evidence to support a conviction for attempted rape, recklessly endangering another or unlawful restraint.

The court reasoned that the crime of recklessly endangering another person consists of reckless conduct that causes or results in a substantial risk of death or serious bodily injury. *Id.,* 295 Pa. Super. at 112, 441 A.2d at 374 (citing *Commonwealth v. Trowbridge,* 261 Pa. Super. 109, 395 A.2d 1337 (1978)). The *Moody* court explained that it was unable to conclude that the evidence presented established that the defendant placed the victim in sufficient physical danger to support a conviction for recklessly endangering another person. *Id.*

In the current case, as explained previously, there is no indication that JS actually suffered serious bodily injury or that the defendant intended to cause JS death or serious bodily injury. In accordance with that rationale,

the court must dismiss the charge of recklessly endangering another person.

The defendant is also charged with simple assault, endangering welfare of children and harassment. First, a defendant is guilty of simple assault if he intentionally, knowingly or recklessly causes bodily injury to another. 18 Pa.C.S. §2701(a)(1). Bodily injury is defined as "impairment of physical condition or substantial pain." 18 Pa.C.S. §2301. As the *Roche* court indicated, evidence establishing that the defendant punched the victim in the face with a single blow is sufficient to support a conviction for simple assault. *Roche,* 783 A.2d at 773. In the current matter, Mr. S testified that JS informed him that the defendant punched JS in the face and JS made a punching gesture toward the left side of his face. Additionally, the Commonwealth presented photographs and testimony establishing that there was significant bruising on JS's face, which Dr. Conti opined was caused by being struck by another person. Therefore, in accordance with the court's decision in *Roche,* the Commonwealth has established a prima facie case that the defendant committed the offense of simple assault.

Moreover, endangering the welfare of children is defined as "(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. §4304(a)(1). In *Commonwealth v. Passarelli,* 789 A.2d 708 (Pa. Super. 2001), the victim, a 3-month-old child, was left in the care of the appellant, her father, while her mother ran errands. When the victim's mother

returned she noticed a bump on the back of the victim's head, which the victim did not have before the mother placed her in the care of the appellant. The mother transported the victim to the hospital and it was discovered that the victim suffered from a possible skull fracture, swelling of the brain and three broken ribs. The appellant was convicted of simple assault and endangering welfare of children and acquitted of aggravated assault and recklessly endangering another person.

Initially, the *Passarelli* court noted that 18 Pa.C.S. §4304(a)(1) permits convictions for endangering a child either through an act or by a failure to act. *Id.,* 789 A.2d at 716. The *Passarelli* court reasoned that the Commonwealth presented expert testimony at trial that the victim's injuries were not an accident, but caused by shaking or blunt impact to the back of the victim's head. *Id.* The court held that, "After a thorough review of the record, we conclude that the evidence was sufficient to sustain [the appellant's] conviction for simple assault and EWC [endangering welfare of children]." *Id.*

In the case currently before the court, there has been evidence presented that the defendant, who was the boyfriend of the victim's mother, punched JS in the face causing bruising to the child's face. An adult striking a 4-year-old child in the face with a closed fist causing a large amount of bruising clearly violates the duty of care, protection and support stated in 18 Pa.C.S. §4304(a)(1). Additionally, the Commonwealth presented the expert testimony of Dr. Conti, who stated that the bruising to JS's face was not self-inflicted and was caused by being struck by another individual. Thus, the Commonwealth has presented sufficient evidence to establish a prima

facie case that the defendant committed the offense of endangering welfare of children.

The defendant is also charged with harassment, which occurs when a person strikes or has physical contact with another person with the intent to harass, annoy or alarm another. 18 Pa.C.S. §2709(a)(1). In *Commonwealth v. Blackham,* 909 A.2d 315 (Pa. Super. 2006), the appellant grabbed an 8-year-old child by the arm and the back of his neck and forced him to go home. The victim screamed for the appellant to let him go, but the appellant refused to do so. Those actions resulted in bruises on the victim's arm and the appellant was charged with harassment. The appellant was convicted at a summary hearing and filed for a trial de nova. After a trial, the appellant was convicted as well. The appellant filed an appeal, in which she argued that there was insufficient evidence to support a conviction for the charge of harassment.

The *Blackham,* court reasoned that the testimony from trial indicated that the appellant made physical contact with the victim with the intent to harass, annoy or alarm him. *Id.,* 909 A.2d at 320. The court reached this conclusion based on the testimony of the victim, who stated that the appellant grabbed his arm to take him home and she would not release it, even though he "kept telling her to get off of me . . . ." *Id.,* 909 A.2d at 319. As a result, the court held that the Commonwealth presented sufficient evidence that the appellant harassed the victim in violation of 18 Pa.C.S. §2709(a)(1). *Id.*

In the current matter, the record indicates that the defendant punched JS in the face, which caused substantial bruising to the left side of his face. Similar to the physical contact in *Blackham,* it was done to harass, an-

noy or cause alarm to JS. In fact, there is testimony by Dr. Conti that during the medical examination JS was in mild distress and was not talkative. It appears that JS was in some form of emotional distress from the incident in question. Additionally, there would be no other reason for the defendant to strike JS other than to cause him alarm. Therefore, the Commonwealth has established a prima facie case that the defendant committed the offense of harassment.

For the reasons set forth in this opinion, the defendant's omnibus pretrial motion is granted in part and denied in part. The Commonwealth has failed to establish a prima facie case that the defendant committed aggravated assault and recklessly endangering another person; therefore, those charges are dismissed. However, the Commonwealth has presented sufficient evidence that the defendant committed the offenses of simple assault, endangering welfare of children and harassment.

### ORDER

Now June 9, 2010, this case being before the court on April 7, 2010, for a hearing on the omnibus pretrial motion filed by the defendant, with both parties appearing, the Commonwealth of Pennsylvania, represented by counsel, Kathleen Fee-Baird, Esquire, assistant district attorney for the County of Lawrence and the defendant, Harry W. Lyons, represented by counsel, David H. Acker, Esquire, and after a hearing held, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

(1) In accordance with the attached opinion, the omnibus pretrial motion in the nature of a motion for writ

of habeas corpus regarding the charges of aggravated assault and recklessly endangering another person is hereby granted and the charges of aggravated assault and recklessly endangering another person are hereby dismissed.

(2) In accordance with the attached opinion, the omnibus pretrial motion in the nature of a motion for writ of habeas corpus regarding the charges of simple assault, endangering welfare of children and harassment is hereby denied.

(3) This case is placed on the August 2010 criminal jury trial term.

(4) The clerk of counts is directed to serve a copy of this order of court upon counsel of record, Kathleen Fee-Baird, Esquire and David H. Acker, Esquire.